UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TAMMY B., : | |
|     Plaintiff, : | |
| : | |
|     v. : | C.A. No. 21-22MSM |
| : | |
| KILOLO KIJAKAZI, : | |
| Acting Commissioner of Social Security, : | |
|     Defendant. : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On April 12, 2017, Plaintiff Tammy B., "a younger person" who graduated from high school and worked for many years as a licensed massage therapist, filed her second set of disability applications seeking Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff alleges that she stopped working in 2016 due the progression of long-standing multiple sclerosis ("MS") and mental impairments (anxiety, depression and panic disorder and attention deficit disorder ("ADD")). Based on the date of the denial of her first set of applications, Plaintiff's alleged onset date is March 1, 2017. Plaintiff argues that the residual functional capacity ("RFC")[1] on which the administrative law judge ("ALJ") relied is not supported by the totality of the evidence in that the ALJ omitted limitations based on Plaintiff's mental impairments, which the ALJ had found to be non-severe at Step Two. The Acting Commissioner of Social Security ("Commissioner") argues that the ALJ properly applied the law to the substantial evidence of record.

---

[1] "RFC" or "residual functional capacity" is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

Now pending before the Court is Plaintiff's motion for reversal of the decision of the Commissioner. ECF No. 13. The Commissioner has filed a counter motion to affirm the denial of benefits. ECF No. 14. Both motions have been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

I.  **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam). The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court must consider evidence detracting from evidence on which Commissioner relied). The Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).

II.  **Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

2

twelve months. 42 U.S.C. § 416(I); 20 C.F.R. § 404.1505.[2] The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A. The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. 20 C.F.R. § 404.1520(g). The claimant bears the burden through Step Four; it shifts to the Commissioner at Step Five. Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020).

### B. Opinion Evidence

To assess opinion evidence, an ALJ must consider the persuasiveness of medical opinions in the case record. See 20 C.F.R. § 404.1520c. The most important factors are supportability and consistency; these are usually the only factors the ALJ is required to articulate. 20 C.F.R. § 404.1520c(b)(2); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL

---

[2] The Social Security Administration has promulgated identical sets of regulations governing eligibility for DIB and SSI. See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986). For simplicity, I cite only to one set of these regulations.

3562689, at *5 (D.N.H. Aug. 6, 2019). Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding[] is with other evidence in the claim." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017). Weighed in light of the evidence of record, the ALJ may consider the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding. See 20 C.F.R. § 404.1520c(c)(1)-(5).

### C. Step Two Determination

An impairment is severe only if it "significantly limit[s]" a claimant's physical or mental ability to do basic work. 20 C.F.R. § 404.1520(c). Step Two is a screening device used to focus the sequential analysis on applicants with severe impairments by eliminating those "whose impairments are so minimal that, as a matter of common sense, they are clearly not disabled from gainful employment." McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1123 (1st Cir. 1986). If an impairment imposes mild limitations, it is generally considered not severe at Step Two. 20 C.F.R. § 404.1520a(d)(1). If there is error at Step Two, but the sequential analysis continues because of another severe impairment, the error is generally deemed harmless. White v. Colvin, No. CA 14-171 S, 2015 WL 5012614, at *8 (D.R.I. Aug. 21, 2015). "[A]n error at Step Two will result in reversible error only if the ALJ concluded the decision at Step Two, finding no severe impairment." Syms v. Astrue, Civil No. 10-cv-499-JD, 2011 WL 4017870, at *1 (D.N.H. Sept. 8, 2011) (collecting cases).

### III. Factual Background and Analysis[3]

---

[3] Because Plaintiff has placed in issue solely the ALJ's mental health determinations, only they are discussed in this report and recommendation.

4

After Plaintiff's claim was denied administratively (following file reviews by three expert psychologists),[4] the ALJ conducted a hearing and issued his first decision on September 14, 2018. Tr. 216-28. In reliance on the non-examining psychologists and his own consideration of the evidence, the ALJ found that Plaintiff could perform several unskilled sedentary jobs based, *inter alia*, on the Step Two finding that her mental impairments (anxiety, depression, panic disorders and ADD) were non-severe and the RFC finding that she could perform light work with significant additional exertional, postural and environmental limitations, and the need to use a cane. Tr. 221. Over a year later, the Appeals Council vacated the decision and remanded the case back to the ALJ.[5] On March 4, 2020, the ALJ conducted a second hearing and, on April 16, 2020, issued his second decision, which is the one now under review. Tr. 10-27.

Despite Plaintiff's ongoing mental health treatment after the first decision, the ALJ's second decision resulted in the same Step Two determination – that anxiety, depression and panic disorder and ADD are medically determinable impairments but that they are mild and do not cause more than minimal limitations in Plaintiff's ability to work. Tr. 14. In addition to Dr. Michael Slavitt, the psychologist who provided treatment prior to the onset date, the ALJ's decision reveals that he looked carefully at Plaintiff's complaints and statements regarding her activities. The ALJ also looked at the treating records of Plaintiff's therapist, Dr. Marcia Liss,

---

[4] Dr. Marsha Hahn reviewed the file initially and signed off on her findings on July 20, 2017; Dr. Demetri Dres reviewed the file again for the Office of Quality Review on August 9, 2017; Dr. Ryan Haggarty reviewed the file on reconsideration and signed off on his findings on October 19, 2017. All three found that Plaintiff has established diagnoses of anxiety and depression but that her symptoms were mild and were projected to be "non-severe . . . 12 months from 2/17 onset given sustained psych tx." Tr. 133, 162; see Tr. 191 ("diagnosis of depression and anxiety that is of non-severe impairment").

[5] The ALJ critiques (seemingly accurately) the remand order as "riddled with errors" in that two of the grounds for remand are unambiguously wrong – the ALJ did not refuse to admit the opinion of Nurse Maureen McKone and Plaintiff did not present a constitutional Appointments Clause challenge – and one is inaccurate in that it overlooks what the ALJ actually did at Step Five. Only one (involving the ALJ's failure properly to "consider" the opinion of Dr. Michael Slavitt, a treating psychologist whose treating relationship ended several months prior to the period in issue) is even arguably a reason for further consideration in that the ALJ did discuss Dr. Slavitt's report but did not indicate whether or why he found it persuasive or unpersuasive. See Tr. 11 n.1.

and Plaintiff's neurologist, Dr. Syed Rizvi, and of the two treating providers who prescribed mental health medication, Plaintiff's primary care physician, Dr. Jose Cloutier, and beginning in late 2017, Nurse Maureen McKone (Nurse Practitioner Psychiatry). The ALJ particularly focused on the objective clinical findings in the mental status examinations ("MSEs") of record and Plaintiff's improvement with medication adjustment. As the ALJ summarized his Step Two finding:

> [T]he claimant has had many complaints related to the above mental impairments, but . . . [t]he claimant has not had any consistent impaired mental status examinations. Mentally, there is no consistent documentation of impaired social, cognitive, daily, or adaptive function related to mental illness. . . . Simply, though the claimant has sought treatment, there has been no consistent documentation of functional deficits. It appears that medication has kept the claimant functional.

Tr. 16.

After Step Two, the ALJ continued the sequential analysis. The RFC portion of his decision considers the impact of her mental health symptoms on Plaintiff's ability to function. Tr. 19-24. Ultimately, the ALJ found the findings of Dr. Haggarty, the non-examining expert at the reconsideration phase, to be persuasive, while he found the opinion of Nurse McKone to be just partially persuasive. Tr. 23. He rejected the Slavitt opinion as not persuasive because of its inconsistency with the longitudinal record and the lack of objective evidence to support its limitations. Tr. 24. Based on these and other findings, the ALJ landed on a significantly limited RFC: that Plaintiff could do no more than sedentary work with additional exertional, postural and environmental limitations, as well as the need to use a cane. Tr. 17. In reliance on the testimony of a vocational expert, the ALJ found that there are jobs that a person with this RFC could perform. The ALJ also questioned the vocational expert about whether these jobs could still be available if the hypothetical individual was limited in the ability to maintain attention and concentration, to carry out only simple tasks and instructions and to tolerate only simple changes

6

in the work setting. Tr. 71-72. Based on the vocational expert's response, the ALJ made the alternative finding that "[e]ven if her mental impairments were severe, the claimant could perform the identified jobs." Tr. 26 n.5.

Plaintiff argues that the ALJ's decision is completely unsupported by substantial medical evidence because the RFC does not incorporate the restrictions established by her "well-documented fatigue, anxiety, poor attention/concentration and cognitive decline." ECF No. 13-1 at 19. To buttress this argument, Plaintiff points to specific pages from the record that she contends reflect limitations that the ALJ "strategically omitted." Id.

There are two flaws in this argument.

First, fundamental to Social Security law is the principle that the Court must affirm an ALJ's findings as long as there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (internal citation and quotation marks omitted). As the Supreme Court cautioned, "the threshold for such evidentiary sufficiency is not high." Id. That is, if there is "substantial evidence" to support the ALJ's finding that Plaintiff's fatigue, anxiety, poor attention/concentration and cognitive decline were not severe, the decision must stand despite other evidence from which a different conclusion might be drawn; this Court's review is not *de novo* but is to determine whether substantial evidence supports the ALJ's findings. See Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Second, Plaintiff is simply wrong in contending that the ALJ "strategically omitted" and did not examine the evidence supporting her claims of fatigue, anxiety, poor attention/concentration and cognitive decline. As to each,[6] the ALJ

---

[6] The Court has reviewed each of Plaintiff's twenty-six record references that she cites to support her argument. As the Commissioner correctly contends, none of them supports Plaintiff's proposition that they evidence limitations not considered by the ALJ. To the contrary, they reflect the same complaints and objective clinical findings (particularly the MSEs) that the ALJ expressly considered and, for the most part, they support the ALJ's findings.

appropriately examined and considered the conflicting evidence. Because, as to each, there is substantial evidence to buttress the ALJ's determination, both at Step Two and for the RFC, there is no error and the ALJ's decision must be affirmed.

Regarding fatigue, the ALJ did not treat fatigue as a mental impairment that was non-severe at Step Two. To the contrary, the ALJ's RFC analysis focuses significantly on Plaintiff's allegations of fatigue and weakness, and on the evidence of her inconsistent activities (for example, yoga and babysitting for a grandchild), as well as on the many references to fatigue and weakness in the treating medical record. Tr. 19-22. Based on this analysis and in reliance on the findings of the non-examining physicians, who also considered Plaintiff's allegations of weakness, the ALJ resolved the evidentiary inconsistencies and incorporated substantial exertional limitations into the RFC. Tr. 17. Plaintiff has not challenged these aspects of the ALJ's decision. Plaintiff's contention that fatigue was omitted from consideration in establishing her RFC is simply wrong.

Regarding anxiety, for both the Step Two findings and RFC, the ALJ not only relied on the unchallenged findings of the non-examining psychologists and Plaintiff's activities, but also on the MSEs of record, which the ALJ accurately summarized as largely or entirely normal. For example, Dr. Rizvi, the neurologist, consistently performed an MSE at every appointment; the resulting observations are entirely normal, with a single exception, at the last appointment, when Dr. Rizvi observed not anxiety but depression. E.g., Tr. 609, 918, 1325; see Tr. 1209-10 (with

---

To illustrate with just one example, Plaintiff argues that the RFC does not reflect limitations evidenced by the record at Tr. 1209-10. ECF No. 13-1 at 18. That reference is to Dr. Rizvi's treating note of October 29, 2018. It includes Dr. Rizvi's MSE findings that Plaintiff was "[a]wake, alert and oriented," had normal mood and affect, had "[n]o problem" with cognitive testing, had intact memory and had fluent speech with vocabulary intact. Tr. 1209. At the same appointment, Dr. Rizvi referenced Plaintiff's medication regime for MS and mental health and noted that "[Plaintiff] has been doing well. She is more relaxed . . . ." Tr. 1209-10. Thus, this record is supportive of, not inconsistent with, the ALJ's findings. Moreover, far from having been ignored by the ALJ, this record was expressly considered in his decision. Tr. 15.

medication, "[Plaintiff] has been doing well. She is more relaxed . . . ."). Similarly, Dr. Liss, the therapist, noted anxiety and worry due to situational stress and family concerns at many appointments, but also consistently found that Plaintiff's prognosis was "good," and at least once noted that Plaintiff's mood was "better." E.g., Tr. 969, 989 1300-01. Nurse McKone often observed anxiety, but also sometimes noted that Plaintiff's mood was "pretty good," "a little better," or "ok." E.g., Tr. 837-38, 1012, 1016. Significantly, and consistent with the Dr. Haggarty's finding that her anxiety was mild "given sustained psych tx," Tr. 191, once Nurse McKone adjusted Plaintiff's medications and she reengaged with therapy, the treating notes reflect: "Symptom frequency/persistence: mild, intermittent." E.g., Tr. 1038, 1045 (emphasis supplied). Because the ALJ's Step Two and RFC findings regarding anxiety are supported by this substantial evidence, there is no error.

      Regarding attention/concentration and cognitive decline, the evidence is similar. That is, the ALJ (and Dr. Haggarty on whom he relied) appropriately focused on Dr. Rizvi's MSEs, which were based, *inter alia*, on testing and observation of Plaintiff's attentional, cognitive and memory functions; all are normal at every visit over the entire period, E.g., Tr. 826, 1209, except for the last appointment shortly before the ALJ hearing, when Dr. Rizvi noted "[s]lightly decreased processing speed" and ordered neuropsychologic testing, Tr. 1325 (emphasis supplied). Otherwise, Nurse McKone once observed "poor" attention and concentration, but generally noted that Plaintiff's attention/concentration was "fair," with intact memory and adequate fund of knowledge, while Dr. Liss noted consistently "developmentally appropriate" attention/concentration, linear and logical thought processes, intact memory and adequate fund of knowledge. E.g., Tr. 833, 1012, 1300. Together with the findings of the non-examining

9

psychologists, the ALJ appropriately marshaled these MSE observations to support his findings at Step Two and for the RFC. There is no error in his approach.

The Court's work could stop here. However, the ALJ included an alternative decision, which establishes that any error (and I find none) is harmless. Plaintiff has not challenged the ALJ's finding (buttressed by answers to questions directed to the vocational expert) that the inclusion in the RFC of limitations based on anxiety, poor attention/concentration and cognitive decline would not preclude the jobs on which the decision is based. See Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 730 (6th Cir. 2013) (where ALJ asked VE in the context of "alternative step-five finding" whether claimant could still perform work identified by VE even if claimant were illiterate and VE responded that he could, substantial evidence supports ALJ's finding that he can perform past relevant work); Cadena v. Astrue, 365 F. App'x 777, 780-81 (9th Cir. 2010) (ALJ's alternative ruling at step five renders any step four error harmless). Plaintiff's failure to challenge the ALJ's alternative determination that any error was harmless requires affirmance. Robinson v. Acting Comm'r of Soc. Sec., 766 F. App'x 811, 815 (11th Cir. 2019).

Based on the foregoing, I find that the ALJ's mental health findings are not tainted by error, as well as that, if there was error, it is harmless in light of the ALJ's alternative ruling. I recommend that the Court affirm the Commissioner's decision.

## IV.    Conclusion

Based on the foregoing, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 13) be DENIED and Defendant's Motion to Affirm the Acting Commissioner's Decision (ECF No. 14) be GRANTED. Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court

within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
March 29, 2022